**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **MCAIRLAIDS, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** _7:15CV00006_ |
| | ) | |
| **MEDLINE INDUSTRIES, INC.** | ) | |
| | ) | **TRIAL BY JURY DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| *Serve: Medline Industries, Inc.* | ) | |
| *c/o CT Corporation System* | ) | |
| *4701 Cox Rd. STE 301* | ) | |
| *Glen Allen, VA 23060-6802* | ) | |

## COMPLAINT

Plaintiff McAirlaids, Inc. ("McAirlaids"), by counsel, for its Complaint against

Defendant Medline Industries, Inc. ("Medline"), states as follows:

## NATURE OF THE ACTION

1.      This action is based on Medline's breach of its exclusive supply agreement with

McAirlaids, misappropriation of McAirlaids' intellectual property, and infringement of

McAirlaids' trade dress.

2.      Medline, the self-proclaimed largest privately held manufacturer and distributor

of healthcare supplies in the United States, entered into an exclusive supply arrangement with

McAirlaids, a private producer of airlaid absorbent materials located in Rocky Mount, Virginia,

for the sale of medical and hygienic absorbent underpads manufactured by McAirlaids.  Medline

and McAirlaids were both fully aware of the lucrative nature of this arrangement in the highly

competitive medical underpads market.

3.     Medline was made the exclusive buyer of certain McAirlaids underpad products utilizing an absorbent core.  In return, McAirlaids was given a right of first refusal to manufacture Medline's entire requirement of underpads utilizing any airlaid absorbent core bearing the Medline mark.

4.     McAirlaids' right of first refusal served as a safeguard.  It guaranteed McAirlaids would be given the first opportunity to manufacture and profit from any competing products that Medline might market as an alternative to McAirlaids' products.  McAirlaids' right of first refusal also served to protect McAirlaids from unwelcome competition from its exclusive customer.

5.     Medline and McAirlaids further agreed that McAirlaids is the sole owner of all intellectual property rights inherent and related to the absorbent underpads.

6.     Despite the significant profit that Medline realized as McAirlaids' exclusive supplier, Medline chose to undermine its business partner, McAirlaids, by surreptitiously having made in China and bringing to market competing knock-off underpads utilizing McAirlaids' intellectual property and bypassing McAirlaids' right of first refusal so Medline could reap all the profits without McAirlaids' knowledge or consent.  Medline did so with the assistance of its President, Daniel Love, who had executed the parties' exclusive supply agreement on Medline's behalf, and other Medline employees.  Medline's conduct not only constituted a wrongful denial of McAirlaids' right of first refusal, it also violated McAirlaids' intellectual property rights because the Chinese-made knock-off pads bore an identical embossing pattern – for which McAirlaids owns a federally registered trade dress – as the pads McAirlaids made for Medline. Going even further, Daniel Love and other Medline employees then misappropriated other McAirlaids' intellectual property and fraudulently filed, and later purportedly assigned to

2

Medline, an undisclosed patent application with the United States Patent and Trademark Office seeking protection for intellectual property developed by McAirlaids and inherent and relating to the underpad products that Medline knew was legally and contractually owned by McAirlaids. Since that time, the USPTO has issued a patent for which Medline falsely claims to be the sole owner. McAirlaids discovered this misappropriation of its intellectual property only after the patent issued. Despite Medline's efforts to fraudulently conceal its conduct, McAirlaids has further discovered that Medline, in breach of its contract with McAirlaids, sells underpads that utilize the intellectual property developed by McAirlaids and actively and independently competes with McAirlaids in the profitable underpad market, to the detriment of McAirlaids.

7.     In sum, Medline's action in bringing an alternative underpad to market was in contravention to McAirlaids' contractual right of first refusal and intellectual property rights. Moreover, in flagrant violation of federal and common trade dress law, the knock-off underpads that Medline (McAirlaids' business partner) secretly had made in China and brought to market, and from which Medline has substantially profited, misappropriates the same distinctive and nonfunctional trade dress owned by McAirlaids. Through this underhanded and unlawful conduct, Medline has been unjustly enriched to the detriment of McAirlaids.

8.     In this action, McAirlaids seeks to hold Medline accountable for its deceitful business activity that the parties' contract, as well as law and equity, were intended to prevent.

## PARTIES

9.     McAirlaids is a Virginia corporation with its principal place of business in Rocky Mount, Virginia.

{#1770179-1, 108811-00014-01}

10.     Upon information and belief, Medline is an Illinois corporation with its principal place of business in Mundelein, Illinois.  Medline is registered to do business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and the matter in controversy is between citizens of different states.  This Court also has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1116 and 1121(a) and 28 U.S.C. §§ 1331, and 1338(a) & (b).  This Court has supplemental jurisdiction over the state common law claims under 28 U.S.C. § 1367(a).

12.     This Court has personal jurisdiction over Medline because Medline conducts and has conducted ongoing and continuous business in the Commonwealth of Virginia and the Western District of Virginia, and because Medline is subject to jurisdiction under Virginia Code § 8.01-328.1.  By its physical presence in Virginia and this District, Medline has engaged in business dealings and has contracted with persons and entities in Virginia and this District. Medline has purposefully directed its business activities toward Virginia and this District. Through its conduct, Medline has purposefully availed itself of the privileges of conducting business in Virginia and this District.  While engaging in its conduct, it was reasonably foreseeable that Medline would be subjected to this Court's jurisdiction.

13.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) and (c) in that Medline is subject to personal jurisdiction in this District.  Venue in this Court is also appropriate because a substantial part of the events or omissions giving rise to McAirlaids' claims against Medline occurred in the cities or counties constituting the Roanoke Division.

{#1770179-1, 108811-00014-01}

## FACTUAL BACKGROUND

### *McAirlaids Trade Dress*

14.     At all times since 2005, McAirlaids has been in business in the United States manufacturing, selling and/or marketing medical and hygienic absorbent pads, including absorbent incontinence bed pads.

15.     At all times since 2005, McAirlaids' absorbent pads have had a distinctive and nonfunctional trade dress design consisting of a point pattern of repeating embossed dots (the "McAirlaids Trade Dress").

16.     McAirlaids owns U.S. Registration No. 4,104,123 for the McAirlaids Trade Dress, which was issued on the Principal Register by the United States Patent and Trademark Office on February 28, 2012.  A copy of the registration certificate for the McAirlaids Trade Dress is attached hereto and incorporated herein by reference as **Exhibit A**.  McAirlaids' federal trademark registration gives McAirlaids the exclusive right to use the McAirlaids Trade Dress throughout the United States in connection with absorbent pads.

17.     Since 2005, McAirlaids has sold over 200 million absorbent pads in the United States with the McAirlaids Trade Dress.

18.     Companies in the absorbent pad industry use their respective trade dress patterns to package their pads in order for consumers to readily identify one company's pad from the others.  To that end, McAirlaids advertises and markets its absorbent pads with the McAirlaids Trade Dress through, among other channels, brochures, trade shows, and the internet, and directly to customers via an exclusive sales arrangement with Medline.  Since 2005, McAirlaids has spent substantial sums in advertising and marketing its absorbent pads with the McAirlaids Trade Dress in the United States.  A representative advertisement for McAirlaids' absorbent pads

5

which prominently features and promotes the McAirlaids Trade Dress is attached hereto and incorporated herein by reference as **Exhibit B**.

19.     McAirlaids has developed substantial goodwill in the McAirlaids Trade Dress, which is associated closely with McAirlaids' absorbent pads, and which serves to identify and distinguish McAirlaids' absorbent pads from those of others and to indicate the source, origin, sponsorship and affiliation of McAirlaids' absorbent pads.

*McAirlaids' Exclusive Supply Agreement with Medline*

20.     McAirlaids and Medline entered into a supply agreement ("Supply Agreement") that the parties executed on January 7, 2010.  A copy of the Supply Agreement is attached hereto and incorporated herein by reference as **Exhibit C**.  The Supply Agreement established an exclusive relationship between McAirlaids and Medline whereby Medline would be the exclusive purchaser of certain underpads identified in the agreement that utilize an airlaid absorbent core ("Underpad Products") for resale and distribution in and into North America.

21.     Prior to January 7, 2010, McAirlaids and Medline had a supply arrangement that operated on a purchase order by purchase order basis.  Throughout their relationship, Medline has relied on McAirlaids' substantial technical knowledge, experience, know-how and intellectual property related to the research, development and manufacture of airlaid underpads.

22.     The Underpad Products manufactured by McAirlaids are known and marketed by Medline as Ultrasorbs®.  Since in or around 2007, McAirlaids researched, developed and/or manufactured air-permeable underpads to be sold by Medline under the Ultrasorbs® Air-Permeable ("AP") line.  Since in or around 2009, McAirlaids researched, developed and/or manufactured extra-strength, air-permeable underpads to be sold by Medline under the Ultrasorbs® Extra-Strength ("ES") line.  Since in or around 2012, McAirlaids researched,

6

developed and manufactured ultra-strength, air-permeable underpads to be sold by Medline under the Ultrasorbs® Ultra-Strength ("US") line.  McAirlaids is the sole owner of the intellectual property embodied in the Ultrasorbs® underpads.

23.     Various classifications of Ultrasorbs® underpads were the subject of the Supply Agreement, including but not limited to Ultrasorbs® ES, Ultrasorbs® AP and Ultrasorbs® US. One of the primary purposes of the Supply Agreement was to confirm McAirlaids' sole ownership of all intellectual property inherent in and related to the Underpad Products and to confirm McAirlaids' sole ownership of all intellectual property it developed in connection with the Underpad Products.

24.     In return for Medline's right to be the exclusive purchaser of the Underpad Products, Medline granted McAirlaids a right of first refusal to supply Medline with its entire requirement of underpads utilizing any airlaid absorbent core and bearing the "Medline" mark or name that Medline required in its business.  Medline and McAirlaids agreed that all notices, requests, demands and communications that are or may be required under the contract must be given in writing to the other party and their counsel.  This requirement applied to any notice or communication concerning McAirlaids' right of first refusal.

25.     Medline further agreed to defend, indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fine, penalties, damages, settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of, among other things, (a) any breach of the Supply Agreement by Medline and (b) any actual or alleged violation or any law, statute, rule, regulation or order by Medline relating to the sale or use of the Underpad Products.

26.     By entering into the Supply Agreement, the parties expressly recognized the importance of McAirlaids' intellectual property rights, including its technical expertise and

7

know-how.  The parties agreed that regardless of any design or other specification provided by Medline to McAirlaids, McAirlaids shall be and remain the sole owner of all intellectual property rights inherent and related to Underpad Products.  This agreement served to assign all relevant existing intellectual property that was not already owned by McAirlaids to McAirlaids and guaranteed McAirlaids sole ownership in any other intellectual property related to Underpad Products created prior to the expiration of the contract.

### The '321 Patent Embodying Intellectual Property Developed and Owned by McAirlaids

27.     Following execution of the Supply Agreement, on August 26, 2010, unbeknownst to McAirlaids, Medline employees filed an unpublished patent application with the USPTO for Disposable Absorbent Lift Device, Application Number US 12/869,432, relating to disposable absorbent pads (the "'432 Patent Application").  The intellectual property embodied in the '432 Patent Application was developed by McAirlaids.

28.     The named co-inventors in the undisclosed '432 Patent Application included Medline President Daniel Love and Medline employees Scott A. Smith, Steve A. Maskrey, and Paul L. Bottcher.  A copy of the '432 Patent Application that was eventually published on March 1, 2012 is attached hereto and incorporated herein by reference as **Exhibit D**.

29.     Medline's undisclosed '432 Patent Application did not identify any McAirlaids employees as co-inventors, and Medline never informed McAirlaids of the undisclosed or subsequently published application.

30.     On or around August 18, 2011, the purported co-inventors assigned their purported interest in the '432 Patent Application to Medline by filing a patent assignment with the USPTO.  Following the purported assignment, the USPTO granted the patent application and issued Publication Number US8791321 (the "'321 Patent") on July 29, 2014.  A copy of the '321

8

Patent is attached hereto and incorporated herein by reference as **Exhibit E**.  McAirlaids developed the intellectual property that is embodied in the '321 Patent.  Medline never informed McAirlaids of the purported assignment of the '432 Patent Application or the USPTO's issuance of the '321 Patent.

31.     In addition to having developed the intellectual property embodied in the '432 Patent Application and '321 Patent, McAirlaids' ownership of this intellectual property is further established by the intellectual property assignment provision in the Supply Agreement.

*Medline's Infringing Trade Dress and Knock-Off Underpads*

32.     In or around 2013, without McAirlaids' knowledge or consent, Medline began surreptitiously manufacturing an alternative to the Underpad Products in China and selling the underpad under the name of Extrasorbs™ Extra Strong Disposable DryPads ("Extrasorbs™ ES").  At that time, without McAirlaids' knowledge or consent, Medline already was manufacturing and selling an alternative to the Underpad Products by the name of Extrasorbs™ Air-Permeable Disposable DryPads ("Extrasorbs™ AP").

33.     A side-by-side comparison of Medline Extrasorbs™ ES knock-off underpads (left) and Ultrasorbs® ES underpads (right) is depicted below:



Extrasorbs™ Extra Strong<br>Disposable DryPads Ultrasorbs® Extra<br>Strength DryPads

34.     A side-by-side comparison of Medline Extrasorbs™ AP knock-off underpads (left) and Ultrasorbs® AP underpads (right) is depicted below:



Extrasorbs™ Air-Permeable     Ultrasorbs® Air-Permeable<br>Disposable DryPads                Underpads

35.     Medline Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads have the same distinctive and nonfunctional McAirlaids Trade Dress design consisting of a point pattern of repeating embossed dots ("Infringing Trade Dress") as Ultrasorbs® ES and Ultrasorbs® AP underpads.

36.     Medline advertises and markets its Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads with the Infringing Trade Dress through, among other channels, brochures, medical advertising, and the internet.

37.     Medline literature that is publically available on its webpage for Extrasorbs™ ES knock-off underpads is attached hereto and incorporated herein by reference as **<u>Exhibit F</u>**.  As depicted in the magnified picture below, Medline prominently features and promotes the Infringing Trade Dress:



38.     Medline literature that is publically available on its webpage for Extrasorbs™ AP knock-off underpads is attached hereto and incorporated herein by reference as **Exhibit G**.  As depicted in the magnified picture below, Medline prominently features and promotes the Infringing Trade Dress:



39.     In addition, Medline prominently features and promotes the Infringing Trade Dress on its store signage, displays and/or packaging for its Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads.

40.     Medline has used, adopted, appropriated and/or copied, without authorization, the McAirlaids Trade Dress.

41.     As depicted below, a search for one of the underpads using the search function on Medline's website yields results for both Ultrasorbs® and the competing Medline Extrasorbs™ knock-off underpads:



42.     As shown in the Google Examples 1 and 2 below, a search for one of the underpads using a prominent internet search engine, Google, yields results for both Ultrasorbs® and Medline's Extrasorbs™ and questions whether the search should actually be for the competing underpad.



Google Example 1



Google Example 2

43.     As shown below in Bing Examples 1 and 2, Bing, another prominent internet search engine, automatically includes results for both Ultrasorbs® and Medline's Extrasorbs™ and questions whether the results should only include one of the underpads, even though the search only calls for one of the underpads.



Bing Example 1



Bing Exmple 2

44.    McAirlaids has not licensed the McAirlaids Trade Dress to Medline, nor has McAirlaids authorized Medline to use or copy the McAirlaids Trade Dress in any way.

45.    Through its use, adoption and/or copying of the McAirlaids Trade Dress, without authorization, Medline is attempting to use or mimic the McAirlaids Trade Dress in which McAirlaids has invested significant time, money, and other resources.

46.    Medline's use, adoption, appropriation and/or copying of the McAirlaids Trade Dress to identify, advertise, market, promote and sell the same or similar type of products sold by McAirlaids, has caused, and unless enjoined is likely to continue to cause, confusion or mistake among, or to deceive, the consuming public as to the source, origin, sponsorship or approval of the products sold by Medline and by McAirlaids.

### *Medline's Breach of McAirlaids' Intellectual Property Rights and Failure to Uphold McAirlaids' Right of First Refusal*

47.    Ultrasorbs® ES and Ultrasorbs® AP underpads, the products from which Medline's Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads derive, were expressly identified and made a part of the exclusive Supply Agreement.

48.    In addition, Medline Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads utilize an airlaid absorbent core, bear the Medline mark, incorporate the same technology and have the same indications for use as Ultrasorbs® ES and Ultrasorbs® AP underpads. Furthermore, Medline targeted its alternative knock-off underpads to the same customer base as McAirlaids' underpads, including, but not limited to hospitals, clinics, nursing homes, intensive care units, critical care units, emergency rooms, home health-care stores and/or e-commerce consumer sales.

49.    As shown below, Medline's online listing of patent information for its products identifies the '321 Patent in connection with both Extrasorbs™ ES (EXTSB3036A350) and

16

Ultrasorbs® ES (USAP3136ES, USAP2436ES, and USAP3136ESLP) underpads, leaving no doubt that intellectual property in the '321 Patent is "inherent and related to the [Underpad] Products" within the meaning of the Intellectual Property Rights section of the Supply Agreement.

<u>Product: Disposable Under pads (Ultrasorbs and Extrasorbs)</u>

<u>Reference Number -</u>      <u>Patent Nos.:</u>

| Reference Number | Patent Nos.: |
|---|---|
| ULTRASORB3136 | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| ULTRASORB2436 | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| USAP3136ES | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| USAP2436ES | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| USAP3157US | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| EXTSB3036A350 | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| USAP3157US | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| USAP3136US | Patent Pending, U.S. 8,791,321, EP2,444,039 |
| USAP3136ESLP | Patent Pending, U.S. 8,791,321, EP2,444,039 |

50.     Medline Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads utilize an airlaid absorbent core bearing the Medline mark and, therefore, constitute a product for which Medline was obligated to provide McAirlaids a right of first refusal to supply Medline with its entire requirement of underpads.

51.     Medline breached its contractual obligation to provide McAirlaids with a right of first refusal to supply Medline with Medline's entire requirement of Underpad Products, including Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads.  Instead, Medline surreptitiously brought Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads to market itself without McAirlaids' knowledge or consent in hopes of taking advantage of its contractual exclusivity to purchase and sell Ultrasorbs® ES and Ultrasorbs® AP under the Supply Agreement while also diverting sales from McAirlaids' sourced products to Medline's sourced products and reaping all of the ill-gotten profits from sales of its knock-off underpads.  Upon

17

information and belief, Medline has sold in excess of $1.5 million dollars' worth of its Extrasorbs™ ES knock-off underpads and in excess of $51 million dollars' worth of its Extrasorbs™ AP knock-off underpads.

52.     The '321 Patent and all intellectual property related to it (as well as any and all foreign equivalents and priority applications), is intellectual property developed by McAirlaids. This intellectual property is also inherent and related to the Underpad Products and, therefore, is owned by McAirlaids under the Supply Agreement.

53.     Medline misappropriated McAirlaids' legal and contractual intellectual property rights.  Despite the fact that McAirlaids developed the intellectual property and notwithstanding the Supply Agreement's intellectual property ownership provision stating that McAirlaids shall be and remain the sole owner of all intellectual property rights inherent and related to the Underpad Products, Medline covertly acquired purported rights to the '321 Patent to the exclusion of McAirlaids and has manufactured and sold Medline Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads under the '321 Patent.  In doing so, Medline has secured for itself all of the ill-gotten profits deriving from its patently unethical and unlawful business conduct.

54.     Despite demand by McAirlaids, Medline has refused to cease and desist using the Infringing Trade Dress and selling its knock-off underpads in violation of McAirlaids' rights. Medline continues to engage in this unlawful and improper activity, which continues to become more pervasive.

55.     On November 21, 2013, McAirlaids provided Medline with notice terminating the Supply Agreement effective December 31, 2014.

56.     McAirlaids has been damaged as a consequence of Medline's unauthorized use, adoption, appropriation and/or copying of the McAirlaids Trade Dress.  Medline's conduct with regard to its unauthorized use, adoption, appropriation and/or copying of the McAirlaids Trade Dress will cause McAirlaids further immediate and irreparable injury, loss and damage for which McAirlaids will have no adequate remedy at law.  Medline's use, adoption, appropriation and/or copying of the McAirlaids Trade Dress without authorization and in breach of the Supply Agreement shows willful misconduct, malice, fraud, wantonness, oppression, or the entire lack of care which would raise the presumption of conscious indifference to its consequences.

57.     McAirlaids has also been damaged as a result of Medline's breach of the Supply Agreement through its failure to provide McAirlaids with a right of first refusal to supply Medline with Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads, Medline's refusal to honor McAirlaids' contractual ownership rights, and Medline's misappropriation of intellectual property developed by McAirlaids and McAirlaids' rights to the '321 Patent and all intellectual property related to it (as well as any and all foreign equivalents and priority applications).

## COUNT I
### (Federal Trade Dress Infringement – 15 U.S.C. § 1114)

58.     McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

59.     McAirlaids owns U.S. Registration No. 4,104,123 for the McAirlaids Trade Dress.

60.     The McAirlaids Trade Dress, as registered, is nonfunctional, inherently distinctive or has acquired secondary meaning and is associated in the mind of the public uniquely with McAirlaids.

{#1770179-1, 108811-00014-01}

61.     Medline's Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads bear the Infringing Trade Dress copy and infringe the McAirlaids Trade Dress.

62.     Medline's importing, distributing, selling and marketing of its Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads with the Infringing Trade Dress have caused a likelihood of confusion, mistake or deception as to the source, origin, sponsorship or approval of the products sold by Medline and by McAirlaids, and thus infringes McAirlaids' exclusive rights in and to the McAirlaids Trade Dress in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     Medline's unauthorized use, adoption, appropriation and/or copying of the McAirlaids Trade Dress deprives McAirlaids of its exclusive right to control, and benefit from, the McAirlaids Trade Dress.  If permitted to continue, Medline's actions will nullify McAirlaids' right to the exclusive use of the McAirlaids Trade Dress, free from infringement, and will have a substantial and adverse effect on McAirlaids' existing and projected future interstate business of marketing and selling its absorbent pads bearing the McAirlaids Trade Dress in violation of 15 U.S.C. § 1114.

64.     Medline's unauthorized use of the McAirlaids Trade Dress has resulted in Medline unfairly benefiting from McAirlaids' advertising and promotion and from the resultant goodwill in the McAirlaids Trade Dress.

65.     Medline's actions have damaged and continue to damage McAirlaids and its business.

66.     Unless enjoined pursuant to 15 U.S.C. § 1116, Medline's conduct will cause McAirlaids irreparable harm for which there exists no adequate remedy at law.

67.     McAirlaids is entitled to an accounting and recovery from Medline of all damages without limitation that McAirlaids has suffered due to Medline's infringing conduct, costs, as well as disgorgement of Medline's profits obtained from its infringing conduct, in an amount to be proven at trial, and to be trebled, pursuant to 15 U.S.C. § 1117.

68.     Medline's actions are willful and deliberate and amount to exceptional circumstances, justifying an award of attorneys' fees to McAirlaids pursuant to 15 U.S.C. § 1117.

69.     Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of any actual or alleged violation of any law, statute, rule, regulation or order by Medline relating to the sale or use of the Underpad Products.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

## COUNT II
### (Common Law Trade Dress Infringement)

70.     McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

71.     McAirlaids is the owner of all right and title to the distinctive McAirlaids Trade Dress.

72.     The McAirlaids Trade Dress is nonfunctional, inherently distinctive or has acquired secondary meaning and is associated in the mind of the public uniquely with McAirlaids.

73.     McAirlaids has prior and exclusive rights to use its McAirlaids Trade Dress to identify, market, promote and sell its medical and hygienic absorbent pads, including absorbent incontinence bed pads.

74.     Medline's Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads copy and infringe the McAirlaids Trade Dress.

75.     Medline's importing, distributing, selling and marketing of its Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads with the Infringing Trade Dress have caused a likelihood of confusion, mistake or deception as to the source, origin, sponsorship or approval of the products sold by Medline and by McAirlaids, and thus infringes McAirlaids' exclusive rights in and to the McAirlaids Trade Dress in violation of the common law of the Commonwealth of Virginia.

76.     Medline's unauthorized use, adoption, appropriation and/or copying of the McAirlaids Trade Dress deprives McAirlaids of its exclusive right to control, and benefit from, the McAirlaids Trade Dress.  If permitted to continue, Medline's actions will nullify McAirlaids' right to the exclusive use of the McAirlaids Trade Dress, free from infringement, and will have a substantial and adverse effect on McAirlaids' existing and projected future business of marketing and selling its absorbent pads bearing the McAirlaids Trade Dress in violation of the common law of the Commonwealth of Virginia.

77.     Medline's unauthorized use of the McAirlaids Trade Dress has resulted in Medline unfairly benefiting from McAirlaids' advertising and promotion and from the resultant goodwill in the McAirlaids Trade Dress.

78.     Medline's actions have damaged and continue to damage McAirlaids and its business.

79.     McAirlaids is entitled to recover its damages from Medline in an amount to be proven at trial.

80.     Unless enjoined, Medline's conduct will cause McAirlaids irreparable harm for which there exists no adequate remedy at law.

81.     Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of any actual or alleged violation of any law, statute, rule, regulation or order by Medline relating to the sale or use of the Underpad Products.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

## COUNT III
### (Breach of Contract – Supply Agreement Right of First Refusal – Damages)

82.     McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

83.     McAirlaids entered into a valid, binding and enforceable Supply Agreement with Medline.

84.     McAirlaids performed and met its obligations under the Supply Agreement.

85.     Medline was obligated under the Supply Agreement to uphold McAirlaids' right of first refusal to supply Medline with Medline's entire requirement of Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads, as well as any other Underpad Product.

86.     Medline failed to uphold its obligation under the Supply Agreement providing McAirlaids' with a right of first refusal to supply Medline with Medline's entire requirement of Extrasorbs™ ES and Extrasorbs™ AP knock-off underpads.  Had Medline provided McAirlaids with the right of first refusal to which it was entitled under the Supply Agreement, McAirlaids

23

would have accepted the right to make Medline's entire requirement of Extrasorbs underpads and/or prevented Medline from using any person or entity other than McAirlaids to manufacture and supply Extrasorbs underpads because Extrasorbs underpads relied on and incorporated McAirlaids' exclusive intellectual property including, in the case of Extrasorbs™ ES, McAirlaids' technology embodied in the '321 Patent and McAirlaids' trade dress, and in the case of Extrasorbs™ AP, McAirlaids' trade dress.

87.     At all relevant times, McAirlaids was ready, willing and able to perform under the right of first refusal, but was deprived of the opportunity to do so.

88.     Medline's failure constitutes a material breach of its obligation to McAirlaids under the Supply Agreement.

89.     In materially breaching the Supply Agreement, Medline engaged in willful misconduct.

90.     As a direct and proximate result of Medline's material breach, McAirlaids has suffered compensatory damages and other damages permitted by law.

91.     Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of Medline's breach of the Supply Agreement.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

### COUNT IV
### (Breach of Contract – Supply Agreement Intellectual Property Rights – Assignment)

92.     McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

24

93.     McAirlaids entered into a valid, binding and enforceable Supply Agreement with Medline.

94.     McAirlaids performed and met its obligations under the Supply Agreement.

95.     Under the Supply Agreement, McAirlaids has been at all times the sole owner of all intellectual property rights inherent and related to Underpad Products.

96.     On July 29, 2014 Medline obtained the '321 Patent.

97.     The '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications), constitutes intellectual property rights inherent and related to Underpad Products under the Supply Agreement.

98.     Medline purports to be the sole owner of the '321 Patent.

99.     Medline materially breached its obligation to McAirlaids under the Supply Agreement by refusing to honor McAirlaids contractual ownership rights and misappropriating McAirlaids' contractual intellectual property rights to the '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications).

100.    In materially breaching the Supply Agreement, Medline engaged in willful misconduct.

101.    As a direct and proximate result of Medline's breach, McAirlaids is entitled to an order requiring Medline to execute and record documents with the USPTO evidencing McAirlaids' sole and exclusive ownership of the '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications).

102.    Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of

Medline's breach of the Supply Agreement.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

## COUNT V
### (Declaratory Judgment – Ownership of '321 Patent)

103.    McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

104.    There is an actual and immediate controversy between McAirlaids and Medline within the meaning of 28 U.S.C. §§ 2201-2202 as to the parties' rights and obligations in connection with McAirlaids' development of the intellectual property embodied in the '321 Patent and in connection with the Supply Agreement, whether McAirlaids is the sole owner of the '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications) and whether McAirlaids has the exclusive right to make and sell products covered by the '321 Patent.

105.    McAirlaids contends that it developed the intellectual property embodied in the '321 Patent.

106.    McAirlaids contends that under the Supply Agreement it has been at all times the sole owner of all intellectual property rights inherent and related to Underpad Products, which includes the intellectual property embodied in the '321 Patent.

107.    On July 29, 2014 Medline obtained the '321 Patent and purports to be the sole owner of the '321 Patent.

108.    McAirlaids contends that it developed the intellectual property embodied by the '321 Patent.  McAirlaids also contends that the '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications),

26

constitutes intellectual property rights inherent and related to Underpad Products under the Supply Agreement.

109.    For these reasons, McAirlaids contends that it is the sole owner of the '321 Patent all intellectual property associated with it (as well as any and all foreign equivalents and priority applications) and that it has the exclusive right to make and sell products covered by the '321 Patent.

110.    This controversy is concrete and capable of judicial resolution.

111.    McAirlaids requests that the Court, pursuant to 28 U.S.C. §§ 2201-2202, declare that McAirlaids is the sole and exclusive owner of '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications) and that McAirlaids has the exclusive right to make and sell products covered by the '321 Patent.

112.    Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of Medline's breach of the Supply Agreement.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

**COUNT VI**
**(Declaratory Judgment – McAirlaids' IP Ownership Under Supply Agreement)**

113.    McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

114.    There is an actual and immediate controversy between McAirlaids and Medline within the meaning of 28 U.S.C. §§ 2201-2202 as to the parties' rights and obligations in connection with McAirlaids' sole ownership of all intellectual property rights inherent in and related to the Underpad Products, including, but not limited to, McAirlaids' sole and exclusive

27

ownership of any and all intellectual property embodied in the U.S. Patent Application No. 13/461,630 (the "'630 U.S. Patent Application") relating to "Hygiene Articles And Methods Of Making And Using Them" and all associated intellectual property (as well as any and all foreign equivalents and priority applications).

115.    McAirlaids contends that, pursuant to the Supply Agreement, it is the sole and exclusive owner of all intellectual property rights inherent in and related to the Underpad Products including, but not limited to, all rights to the intellectual property embodied in the '630 U.S. Patent Application and all associated intellectual property (as well as any and all foreign equivalents and priority applications).

116.    Medline purports to claim rights in the '630 U.S. Patent Application and/or other intellectual property that is solely owned by McAirlaids pursuant to the Intellectual Property Rights section of the Supply Agreement.

117.    This controversy is concrete and capable of judicial resolution.

118.    McAirlaids requests that the Court, pursuant to 28 U.S.C. §§ 2201-2202, declare that McAirlaids is the sole and exclusive owner of all intellectual property rights inherent in and related to the Underpad Products including, but not limited all rights to the intellectual property embodied the '630 U.S. Patent Application and all associated intellectual property (as well as any and all foreign equivalents and priority applications) and that McAirlaids has the exclusive right to make and sell products covered by the '630 Patent Application and/or any resulting patent and any other products that represent or embody intellectual property exclusively owned by McAirlaids by virtue of the Intellectual Property Rights provision of the Supply Agreement.

119.    Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages

28

settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of Medline's breach of the Supply Agreement.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

**COUNT VII**
**(Breach of Contract – Supply Agreement Intellectual Property Rights – Extrasorbs™ ES – Damages and Injunctive Relief)**

120.    McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

121.    McAirlaids entered into a valid, binding and enforceable Supply Agreement with Medline.

122.    McAirlaids performed and met its obligations under the Supply Agreement.

123.    Under the Supply Agreement, McAirlaids has been at all times the sole owner of all intellectual property rights inherent and related to Underpad Products.

124.    On July 29, 2014 Medline obtained the '321 Patent.

125.    The '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications), constitutes intellectual property rights inherent and related to Underpad Products under the Supply Agreement.

126.    Medline purports to be the sole owner of the '321 Patent.

127.    Medline materially breached its obligation to McAirlaids under the Supply Agreement by misappropriating McAirlaids' contractual intellectual property rights to the '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications).

128.    Medline materially breached its obligation to McAirlaids under the Supply Agreement by selling Extrasorbs™ ES knock-off underpads which includes intellectual property

29

rights inherent and related to the Underpad Products for which McAirlaids is the sole owner, including the McAirlaids Trade Dress and the intellectual property embodied by the '321 Patent.

129.    In materially breaching the Supply Agreement, Medline engaged in willful misconduct.

130.    Medline's actions have damaged and continue to damage McAirlaids and its business.

131.    Unless enjoined, Medline's conduct will cause McAirlaids irreparable harm for which there exists no adequate remedy at law.

132.    McAirlaids is entitled to recovery from Medline of all damages without limitation that McAirlaids has suffered due to Medline's infringing conduct, costs and an accounting and disgorgement of Medline's profits obtained from its infringing conduct, in an amount to be proven at trial.

133.    Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of Medline's breach of the Supply Agreement.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

**COUNT VIII**
**(Unjust Enrichment - Extrasorbs™ ES)**

134.    McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

135.    Medline has unfairly benefitted at McAirlaids' expense through its use of McAirlaids intellectual property and Medline's sale of Extrasorbs™ ES knock-off underpads.

136.    Equity and good conscience require restitution.

30

137.     McAirlaids is entitled to an accounting, constructive trust, disgorgement, restitution and/or other equitable remedies in an amount to be determined at trial.

## COUNT IX
**(Breach of Contract – Supply Agreement Intellectual Property Rights – Extrasorbs™ AP Damages and Injunctive Relief)**

138.     McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

139.     McAirlaids entered into a valid, binding and enforceable Supply Agreement with Medline.

140.     McAirlaids performed and met its obligations under the Supply Agreement.

141.     Under the Supply Agreement, McAirlaids has been at all times the sole owner of all intellectual property rights inherent and related to the Underpad Products.

142.     Medline materially breach its obligation to McAirlaids under the Supply Agreement by selling Extrasorbs™ AP knock-off underpads which includes intellectual property rights inherent and related to the Underpad Products for which McAirlaids is the sole owner, including the McAirlaids Trade Dress.

143.     In materially breaching the Supply Agreement, Medline engaged in willful misconduct.

144.     Medline's actions have damaged and continue to damage McAirlaids and its business.

145.     Unless enjoined, Medline's conduct will cause McAirlaids irreparable harm for which there exists no adequate remedy at law.

146.     McAirlaids is entitled to recovery from Medline of all damages without limitation that McAirlaids has suffered due to Medline's infringing conduct, costs and an accounting and

31

disgorgement of Medline's profits obtained from its infringing conduct, in an amount to be proven at trial.

147.    Under the Supply Agreement, Medline is obligated to indemnify and hold McAirlaids harmless from any and all claims, liabilities, losses, fines, penalties, damages settlements, costs or expenses whatsoever, including reasonable attorney's fees, arising out of Medline's breach of the Supply Agreement.  McAirlaids is entitled to full and complete indemnification, including without limitation its reasonable attorney's fees, for this count.

**COUNT X**
**(Unjust Enrichment - Extrasorbs™ AP)**

148.    McAirlaids realleges and incorporates by reference the allegations set forth in the foregoing paragraphs, inclusive, as if fully set forth in this paragraph.

149.    Medline has unfairly benefitted at McAirlaids' expense through its use of McAirlaids intellectual property and Medline's sale of Extrasorbs™ AP knock-off underpads.

150.    Equity and good conscience require restitution.

151.    McAirlaids is entitled to an accounting, constructive trust, disgorgement, restitution and/or other equitable remedies in an amount to be determined at trial.

**WHEREFORE,** McAirlaids respectfully requests that the Court:

1.    Award Judgment in favor of McAirlaids and against Medline on all counts of the Complaint;

2.    Enjoin Medline from all unlawful and infringing acts that violate McAirlaids' legal, contractual and equitable rights;

3.    Award McAirlaids its actual and compensatory damages, without limitation, sustained due to Medline's unlawful and infringing conduct in violation of McAirlaids legal, contractual and equitable rights;

32

4.      Order Medline to provide an accounting, impose a constructive trust, and award McAirlaids restitution, disgorgement of all profits derived from its unlawful and infringing conduct and/or other equitable remedies in an amount to be proven at trial;

5.      Declare that McAirlaids is the sole and exclusive owner of '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications) and that McAirlaids has the exclusive right to make and sell products covered by the '321 Patent;

6.      Declare that McAirlaids is the sole and exclusive owner of all intellectual property rights inherent in and related to the Underpad Products including, but not limited to, all rights to the intellectual property embodied in the '630 U.S. Patent Application and all associated intellectual property (as well as any and all foreign equivalents and priority applications) and that McAirlaids has the exclusive right to make and sell products covered by the '630 Patent Application and/or any resulting patent and any other products that represent or embody intellectual property exclusively owned by McAirlaids by virtue of the Intellectual Property Rights provision of the Supply Agreement;

7.      Order Medline to execute and record documents with the USPTO evidencing McAirlaids' sole and exclusive ownership of the '321 Patent and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications);

8.      Order Medline to execute and record documents with the USPTO evidencing McAirlaids' sole and exclusive ownership of the '630 U.S. Patent Application and all intellectual property associated with it (as well as any and all foreign equivalents and priority applications);

9.      Award McAirlaids full and complete indemnification, including, without limitation, McAirlaids' reasonable attorney's fees, for Medline's breach of the Supply Agreement;

10.      Award McAirlaids full and complete indemnification, including, without limitation, its reasonable attorney's fees, for Medline's violation of federal and common trade dress law;

11.      Award McAirlaids recovery of its reasonable attorneys' fees, expenses and costs of prosecuting this action;

12.      Award McAirlaids treble damages;

13.      Award McAirlaids punitive damages;

14.      Order destruction of all infringing articles;

15.      Grant such other and further relief as the Court deems just and equitable; and

16.      Order a trial by jury on all appropriate issues.

Dated: January 6, 2015                    Respectfully submitted,

                                          **MCAIRLAIDS, INC.**


                                          By_____/s/ Joshua R. Treece_____
                                                      Of Counsel
Joshua F. P. Long (VSB #65684)
J. Benjamin Rottenborn (VSB #84796)
Nicholas V. Albu (VSB #78229)
Joshua R. Treece (VSB #79149)
WOODS ROGERS PLC
10 S. Jefferson Street, Suite 1400
P.O. Box 14125
Roanoke, Virginia  24011
Telephone: (540) 983-7625
Facsimile: (540) 983-7711
jlong@woodsrogers.com

        *Counsel for Plaintiff McAirlaids, Inc.*